Cite as 2025 Ark. App. 217

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-23-753

| | |
|---|---|
| ROBERT F. BOERNER; KRISTINA KENDALL; JOY E. MARTSCHING; RICHARD L. MARTSCHING; SHERRY LYNN OWENS; RENITA J. PHILLEY HALE; HANS D. PURKOTT; ILSE M. PURKOTT; CYNTHIA L. SCHREIMEL; ULRICH G. SCHREIMEL; BARBARA SCHUETTE; RENEE SHARBONEAU; GARY WELCH, EITHER INDIVIDUALLY OR AS TRUSTEE OF THE GARY WELCH TRUST; SHARON WILLIAMS; ZACHARY WILLIAMS; RONALD E. RIVERS; ALICE E. RIVERS; AND RIVERS LIVING TRUST, INDIVIDUALLY AND IN THEIR CAPACITY AS OWNERS IN STONYBROOK CHATEAU HORIZONTAL PROPERTY REGIME <br>                                        APPELLANTS <br><br> V. <br><br><br> CELINA RICHARD; ARLENE V. ROSE; TERRELL M. ROSE; MARKILYN DAVIS SPAINHOUR; EDWARD TALLACH; ELLEN TALLACH; CHRISTIE WHITE; AND DONALD WHITE <br>                                      APPELLEES | Opinion Delivered April 9, 2025 <br><br> APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-23-96] <br><br> HONORABLE LYNN WILLIAMS, JUDGE <br><br> AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellants Robert F. Boerner; Kristina Kendall; Joy E. Martsching; Richard L. Martsching; Sherry Lynn Owens; Renita J. Philley Hale; Hans D. Purkott; Ilse M. Purkott; Cynthia L. Schreimel; Ulrich G. Schreimel; Barbara Schuette; Renee Sharboneau; Gary Welch, either individually or as trustee of the Gary Welch Trust; Sharon Williams; Zachary Williams; Ronald E. Rivers; Alice E. Rivers; and Rivers Living Trust, individually and in their capacity of owners in Stonybrook Chateau Horizontal Property Regime, appeal after the Garland County Circuit Court filed an order granting a motion for reconsideration, new trial, and to vacate judgment in favor of appellees Celina Richard; Arlene V. Rose; Terrell M. Rose; Markilyn Davis Spainhour; Edward Tallach; Ellen Tallach; Christie White; and Donald White. On appeal, appellants argue that this court must reverse and remand because (1) appellees could not make new arguments in their motion for reconsideration, new trial, and to vacate judgment to give them a second chance to present their case; (2) appellees waived their arguments that were first made in their motion for reconsideration, new trial, and to vacate judgment by failing to first raise them below; and (3) even if this court considers the merits of their motion for reconsideration, new trial, and to vacate judgment, appellees failed to prove their case. We affirm.

## I. *Relevant Facts*

This appeal stems from a disagreement on how insurance proceeds should be distributed by a group of condo owners at the Stonybrook Chateau Horizontal Property Regime (Stonybrook). Three buildings were originally built on the property, each building containing six apartments. Appellees owned condos in Building A, and appellants owned

2

condos in Buildings B and C.  On May 22, 2022, lightning struck Building A, causing the building to be deemed a total catastrophic loss due to the fire and water damage.  Nationwide Insurance Company tendered the policy limits of $1 million, plus an additional $147,688.41 for cleanup and other miscellaneous costs.

Thereafter, during a "Special Called Co-Owners Meeting" of Stonybrook, the members unanimously voted not to rebuild Building A. A few weeks later, a second Special Called Co-Owners Meeting was held to determine the distribution of the insurance proceeds.  At that meeting, ten of the eighteen total co-owners of all three buildings voted against relinquishing the insurance proceeds exclusively to the owners of Building A.   The position of the co-owners of the majority of Buildings B and C was that the co-owners of Building A should receive only "a portion of the indemnity equal to the percentage representing the basic value of that owner's apartment as set forth in the Master Deed."

Of relevance to this litigation, Stonybrook's bylaws provided the following in pertinent part:

Article IV.
INSURANCE

The Board, for the benefits of the apartments and the owners, shall acquire . . . and shall pay for out of the common expense fund hereinafter provided for, the following insurance:

(a)  A policy or polices of fire insurance with extended coverage endorsement, for the full insurable replacement value of the apartments and common elements[.]

. . . .

(d) The Board shall obtain and maintain at all times insurance of the type and kind and in at least the amounts provided hereinabove . . . which insurance shall be governed by the following provisions:

. . . .

(2) Exclusive authority to adjust losses under policies hereafter in force in the Regime shall be vested in the Board or its authorized representative.

. . . .

(4) Each owner may obtain additional insurance at his own expense[.]

Further, paragraph 4 of the master deed provided a detailed list of the square footage of each apartment and its relative pro rata percentage that each apartment bore to the Stonybrook complex.

Due to the disagreement among the co-owners of Stonybrook, the insurance proceeds were not distributed, and this litigation ensued.

On January 23, 2023, appellees (Building A's owners) filed their complaint for declaratory judgment and supplemental relief. They argued that Stonybrook had no bylaw provision that addressed the distribution of indemnity proceeds after a total catastrophic loss to a single building. Accordingly, they alleged that Arkansas Code Annotated section 18-13-118 (Repl. 2015) of the Arkansas Horizontal Property Act governed and entitled them as co-owners of Building A to the pro rata distribution of the insurance funds. A copy of Stonybrook's bylaws were attached to the complaint.

On March 13, 2023, the circuit court ordered that the remaining insurance proceeds of $1,041,588.23 be paid into the registry of the court.

Appellants (Building B and C's owners "individually and in their capacity of owners in Stonybrook Chateau Horizontal Property Regime") filed an answer and counterclaim on March 21, 2023. They generally denied appellees' allegations and instead alleged that the bylaws provided that the co-owners of Building A were entitled only to "the basic value of their individual apartment, as set forth in the Master Deed[.]" They claimed that Stonybrook had many repairs and other expenses and that the balance of the insurance proceeds belonged to Stonybrook. Appellants attached a copy of Stonybrook's master deed and bylaws.

In their answer to appellants' counterclaim, appellees generally denied the allegations and asked that the counterclaim be dismissed.

Thereafter, a notice of hearing was filed, stating that the matter had been scheduled for a half-day "final hearing" on June 25, 2023. The morning of the hearing, the parties filed a joint stipulation that stated the following:

> In preparation for the final hearing on this matter, the parties stipulate to the following facts:
>
> 1. The Stonybrook Chateau Horizontal Property Regime consists of three condominium buildings—Building A, B, and C, with each building consisting of six condominium units.
>
> 2. Plaintiffs in this action owned condominium units within in Building A.
>
> 3. Defendants in this action all own condominium units within in Building B and C.
>
> 4. In addition, there are common areas, including hallways, roofs, walkways, stairways, land, and a pool, as defined in the master deed attached hereto as Exhibit A. The parties stipulate to the authenticity and admissibility of the master deed.

5

5. On May 22, 2022, lightning struck Building A.

6. Building A was deemed a total catastrophic loss due to fire and water damage.

7. Article IV of Stonybrook's by-laws required that that the buildings be covered by insurance for the full replacement value. A copy of the by-laws is attached hereto as Exhibit B. The parties stipulate to the authenticity and admissibility of the by-laws.

8. Nationwide paid to Stonybrook over $1,000,000 in insurance proceeds for the loss of Building A.

9. On March 13, 2023, the Court ordered the remaining insurance proceeds, totaling $1,041,588.23, be placed in the registry of the Court, where they remain.

The hearing was short, and no witnesses testified. The circuit court stated that it saw the stipulation and that it was brought to its attention that appellees did not have any witnesses to present. Therefore, the circuit court asked whether the parties wished to orally argue the case or send briefs. Counsel for appellees explained that there were two additional stipulations. Counsel noted that the parties also stipulated that appellees elected not to rebuild the units and that there was also insurance on Building C. Thereafter, the circuit court stated that it could send them home quicker if the parties submitted final briefs and attached a proposed judgment instead of presenting any oral argument. Counsel agreed, and the hearing was adjourned.

Appellees (Building A's owners) filed their posttrial brief on July 10, 2023. They essentially argued that the insurance proceeds should be shared exclusively by the co-owners that were directly affected by the damage in proportion to the value of their respective

6

apartments pursuant to the Arkansas Horizontal Property Act and that it would be "an absurd reading of both the bylaws and the relevant statutes" for the co-owners of Buildings B and C to "reap a windfall at the expense of Building A's owners."

Appellants filed their brief along with their proposed findings of fact and conclusions of law approximately an hour and a half later, also on July 10, 2023. Appellants asserted that the co-owners of Building A were entitled to share only $255,510 of the proceeds considering the basic valuation provided in the 1975 master deed and according to the bylaws.[1] They also asserted that each of the appellees had their own fire-insurance coverage "from the sheetrock in" and that Stonybrook owned from "the sheetrock out." Accordingly, appellants argued that appellees' interests were protected by their own policies, and to allow "[a]nything otherwise would be doubledipping." Appellants further asserted for the first time that appellees owed back dues and assessments that should be deducted from the $255,510 they proposed as a "settlement." Notably, appellants did not indicate how much those back dues and assessments were. Finally, they prayed for the following:

> WHEREFORE, Defendants (Respondents) pray that the Court enter a finding that Plaintiffs are entitled to payments for the basic value of their apartments in building A, for a total of $255,510.00, in accordance with the applicable law, the Regime's Master Deed and Bylaws; That the delinquent dues and assessments on building A be paid from The payment of the basic value to Plaintiffs; that the Plaintiffs' Complaint and Supplemental Relief request be denied and dismissed; that the Defendants' Counterclaim be granted for attorney fees and costs, and settlement as set forth above; and that they be granted all other good and proper relief to which they may be entitled.

---

[1]This figure is commensurate with the pro rata ownership of Building A.

7

Two days later, on July 12, 2023, the court entered and filed the proposed order submitted by appellants, stating the following:

FINDING OF FACT

The Court makes the following finding of facts:

1. On or about May 22, 2022, lightning struck building A in the Stonybrook Chateau Horizontal Property Regime, burning it to the ground [.]

2. Building A was insured with Nationwide Insurance Company for $1,000,000 dollars which was paid to the Stonybrook Chateau Horizontal Property Regime, An additional payment was made to Stonybrook for cleanup and miscellaneous in the amount of $147,688.41.

3. On October 18, 2022, at a Special Called Co-Owners Meeting, the members voted unanimously not to rebuild building A. At the meeting, ten residents voted against giving all of the funds from the building A indemnity fund to the Plaintiffs.

4. A.C.A. 18-13-103 through A.C.A. 18-13-120 is the applicable law pertaining to the Arkansas Horizontal Property Act.

5. Pursuant to this Court's Order of March 13, 2023, the remaining funds from the insurance settlement in the amount of $1,041,588.23 were deposited in the Court's treasury.

6. The Court finds that the Master Deed and By-Laws of Stoneybrook are controlling in this case. They have been previously filed herein.

7. The Court finds that the buildings in Stonybrook are owned by the Regime. The apartment owners only own from the sheetrock in on their respective units.

8. The Stonybrook Chateau Horizontal Property Regime consists of three condominium buildings—Building, A, B, and C, with each building consisting of six condominium units.

9. Plaintiffs in this action owned condominium units in Building A.

10. Defendants in this action all own condominium units in Building B and C.

8

11. In addition, there are common areas, including hallways, roofs, walkways, stairways, land, and a pool, as defined in the master deed of Stonybrook. The parties stipulated to the authenticity and admissibility of the master deed.

12. Article IV of Stonybrook by-laws required that the buildings be covered by insurance for the full replacement value. The parties stipulated to the authenticity and admissibility of the by-laws.

CONCLUSIONS OF LAW

13. The Court finds that Plaintiffs are entitled to payment of the basic value of their apartment at the percentage rate of the total value in the Master Deed as found in paragraph numbered 4 on page 5 of the Master Deed of the Regime. The six payments total $255,510.00. This is the provision for payment in conformity with the Master Deed, and the Regime's By-Law Article X. From the individual payments the delinquent dues and assessments shall be deducted.

14. The amount to be paid to Plaintiffs will be from the treasury of the Court, and the balance shall be returned to the Stonybrook Regime.

On July 14, 2023, the circuit court granted a motion for the court to retain the funds in the registry of the court because it was anticipated that there would be an appeal and motion for new trial forthcoming.

Appellees (Building A's owners) retained new counsel and filed a motion for reconsideration, new trial, and to vacate the judgment pursuant to Arkansas Rules of Civil Procedure 59(a)(1)–(3), (6) & (8) and 60 on July 26, 2023. Appellees argued that the circuit court should grant a new trial because (1) the precedent appellants submitted to the court was contrary to Arkansas law; (2) appellants improperly asserted facts not in evidence in their posttrial brief; and (3) a new trial was necessary to decide unresolved questions of law and fact that remain in dispute.

In their incorporated brief, appellees first argued that appellants' precedent failed to identify any conclusions of law regarding the proper statutory construction of the Arkansas Horizontal Property Act. They argued that Arkansas Code Annotated section 18-13-118 required the court to determine the "co-owners entitled to [the indemnity]." They further argued that the court should interpret the phrase to mean a "co-owner of an apartment in the building whose destruction triggered the insurance indemnity" and therefore vacate and reconsider the judgment. Alternatively, appellees asked that the circuit court grant a new trial to allow them to challenge appellants' factual mischaracterizations regarding the scope of ownership by the co-owners in the affected building.

Next, appellees argued that a new trial was necessary to allow them to rebut appellants' assertions of fact that were neither based in evidence nor submitted at trial nor stipulated by the parties but instead improperly asserted in appellants' posttrial brief. They explained that appellants wrongly asserted in their posttrial brief that the property values of the apartments were contained in the 1974 master deed and that appellees each had separate fire-insurance coverage and were essentially double dipping. Appellees argued that appellants had improperly withheld material and inflammatory assertions until after trial, preventing appellees to counter appellants' claims. Therefore, they requested that the court vacate its order and grant a new trial for the parties to be able to present appropriate record evidence on the new assertions.

Finally, appellees argued that a new trial was required for the court to decide unresolved questions of law and fact that remain in dispute. Appellants asserted in their

10

posttrial brief and precedent that appellees owed delinquent dues and assessments even though appellees' property has been completely destroyed. Appellees argued that this cannot be so because appellees could not own property that no longer exists. Therefore, appellees argued that the circuit court must vacate the order and grant a new trial for the court to decide the outstanding issues regarding the dissolution of the parties' relationship.

Appellants disagreed and filed their response on August 8, 2023. In their brief in support, they argued that the motion should be procedurally barred because appellees failed to object to their posttrial brief and proposed precedent before the circuit court filed the July 12, 2023, order. Appellants further made multiple arguments as to why the circuit court's order was correct and asserted that appellees "could have had a trial on the merits but chose to submit the case to the Court on briefs" instead. They further argued that the record should not be reopened when appellees "failed to present any testimony whatever." Thus, appellants asked the circuit court to deny the motion.

Appellees filed a reply on August 11, 2023. They argued that their motion was not procedurally barred. They complained that the order was not a final order and could be corrected at any time because the order failed to specify what delinquent dues and assessments were owed or what the parties were to receive from the insurance proceeds. Appellees additionally explained that they followed the procedure to file briefs and had no opportunity to object because the order was entered approximately twenty-seven hours after they were served with appellants' posttrial brief. Appellees further reiterated their previous arguments as to why they were entitled to a new trial.

On August 17, 2023, the circuit court filed an order stating that "[a]fter careful consideration of the pleadings, submissions, and arguments, the Court hereby grants [appellees'] motion for reconsideration, new trial, and to vacate judgment." The court vacated the July 12, 2023, order and stated that the "action is restored to the trial calendar and will be reset for trial by separate scheduling order." It is from this order that appellants filed their appeal.[2]

## II. *Standard of Review*

Appellees filed their motion for reconsideration, new trial, and to vacate judgment pursuant to Arkansas Rules of Civil Procedure 59(a)(1)–(3), (6) & (8) and 60. In relevant part, Rule 59(a) states the following:

> A new trial may be granted to all or any of the parties and on all or part of the claim on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party: (1) any irregularity in the proceedings or any order of court or abuse of discretion by which the party was prevented from having a fair trial; (2) misconduct of the jury or prevailing party; (3) accident or surprise which ordinary prudence could not have prevented; . . . (6) the verdict or decision is clearly contrary to the preponderance of the evidence or is contrary to the law; . . . [and] (8) error of law occurring at the trial and objected to by the party making the application. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

---

[2]Appellants filed their notice of appeal alleging we have jurisdiction pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(3). Appellees argue in their responsive brief that this court lacks jurisdiction over this appeal for the reasons "fully argued in [their] motion to dismiss the appeal" that was filed in this court on November 17, 2023. We denied appellees' motion to dismiss on January 10, 2024.

Rule 60(a) allows a court to modify or vacate a judgment, order, or decree within ninety days to "correct errors or mistakes or to prevent the miscarriage of justice." Whether to grant or deny a motion to vacate a judgment under Rule 60 lies within the circuit court's discretion and will not be reversed unless the circuit court has abused that discretion. *Losurdo v. Losurdo*, 2023 Ark. App. 584, 680 S.W.3d 487. The decision to grant or deny a new trial under Rule 59(a) is within the discretion of the circuit court, and that decision will not be reversed absent a manifest abuse of discretion, that is, discretion exercised thoughtlessly and without due consideration. *Id.* Finally, the supreme court has noted that a showing of an abuse of discretion is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *W.E. Pender & Sons, Inc. v. Lee*, 2010 Ark. 52, 370 S.W.3d 163.

## III. *Procedural Arguments*

Appellants argue in their first two points on appeal that we must reverse and remand because appellees were procedurally barred from raising their "new arguments"[3] in their motion for reconsideration, new trial, and to vacate judgment. We disagree.

Appellants argue that appellees either were precluded from raising or waived their arguments because appellees "invited" the "error" by agreeing to submit posttrial briefs with proposed precedents on the basis of joint stipulated facts without an evidentiary trial. However, it is well settled that under the doctrine of invited error, an *appellant* may not

---

[3]Appellants do not specifically identify which arguments they consider "new"; rather, they appear to generically reference all arguments appellees made in their motion.

complain of an erroneous action of a trial court *on appeal* if he or she has induced or acquiesced in that action. *Riley v. State Farm Mut. Auto. Ins. Co.*, 2011 Ark. 256, 381 S.W.3d 840. That is not the case here. Appellees raised their complaints about appellants' actions in a timely motion before the circuit court—not this court. Moreover, appellees did not argue that the circuit court erred in considering the case on the basis of the stipulated facts they agreed were appropriate at the final hearing. Rather, they argued a new trial was necessary because the circuit court erred in entering appellants' proposed order that was legally flawed, based on facts appellants asserted that were not in the stipulations or entered into evidence, and left factual and legal issues unresolved. Thus, unlike the cases appellants cite, appellees were not responsible for the court's error, and appellants' argument that appellees invited the error is misplaced.

Appellants further argue that the circuit court could not consider appellees' motion because any arguments needed to be raised at trial or before the circuit court filed its judgment. They explain that appellees could have raised their arguments in a responsive posttrial brief, and because they failed to do so, appellees' only option was to appeal "rather than seek to convince the court with arguments never made before filing the motion." In support, appellants cite several cases that have nothing to do with whether a party can file a motion for new trial but instead generally discuss whether an appellate court may address an argument that was not first raised at trial. Those case are inapposite because appellees raised their complaints below, and the circuit court agreed they had merit. In other words, they are not being raised for the first time on appeal.

14

Contrary to the cases cited and appellants' assertion otherwise, this is not a case in which appellees failed to object at the first opportunity and have thereby waived the arguments made in their motion. *See One 1979 Brown Ford Pickup Truck v. State*, 293 Ark. 188, 736 S.W.2d 2 (1987) (holding that *appellant's* argument first raised in a motion for reconsideration after the court's decision and that could have been raised at trial came too late); *Jackson v. Crump*, 2022 Ark. App. 136, 643 S.W.3d 788 (holding that *appellants* waived their argument *on appeal* by failing to object at the first opportunity when they failed to object either before or *after* the entry of the amended order). Appellees generally argued below that a new trial was necessary because the circuit court erred in entering appellants' proposed order that was legally flawed, based on facts appellants asserted that were not in the stipulations or entered into evidence, and left factual and legal issues unresolved. In other words, appellees challenged the assertions and arguments made in appellants' posttrial brief and precedent—not the stipulations or anything that occurred at the final hearing. Because the circuit court entered the judgment less than two days after appellants filed their posttrial brief, the first opportunity appellees had to object was in their postjudgment motion. Accordingly, the timely arguments made to the circuit court were preserved for the circuit court's consideration.

Last, citing *Wal-Mart Stores, Inc. v. Tucker*, 353 Ark. 730, 120 S.W.3d 61 (2003), appellants argue that appellees were precluded from challenging the sufficiency of the evidence in their motion because "no motion to dismiss or for directed verdict was made below prior to resting." Again, this case is inapposite because appellees' motion was not a

15

challenge to the sufficiency of the evidence. Appellants offer no authority that a motion to dismiss in a bench trial is a prerequisite to the filing of a motion under Rule 59 or 60 under the circumstances presented in this case. Accordingly, we affirm on appellants' first two points on appeal.

IV. *Appellees' Motion for Reconsideration, New Trial, and to Vacate Judgment*

Finally, appellants argue that we must reverse and remand because even if this court considers the merits of their motion for reconsideration, new trial, and to vacate judgment, appellees failed to prove their case. Appellants essentially argue that the circuit court's original order was not contrary to Arkansas law as appellees argued below and discuss at length Stonybrook's bylaws and the Arkansas Horizontal Property Act. Although one of the bases for appellees' motion was that appellants' precedent was contrary to Arkansas law, that was not the only basis. Appellees also argued that the circuit court should grant a new trial because appellants' posttrial brief improperly asserted facts not in evidence, and a new trial was necessary to decide unresolved questions of law and fact that remain in dispute. More specifically, appellees argued that appellants' new assertions that the property values of the apartments were contained in the 1974 master deed and that appellees each had separate fire-insurance coverage and were essentially double dipping were neither based in evidence nor submitted at trial nor stipulated by the parties. Appellees additionally contested appellants' new assertions that they owed delinquent dues and assessments in unspecified amounts even though appellees' property had been destroyed. As such, appellees argued that their continued ownership status was left unresolved by the circuit court's adoption of

16

appellants' proposed precedent. Appellants notably failed to address on appeal any of these independent grounds for the circuit court's decision to grant appellees' motion.

In issuing a blanket ruling, as the circuit court did here, a circuit court is deemed to have accepted all arguments advanced by the prevailing party. *Corbitt v. Ark. Game & Fish Comm'n*, 2023 Ark. 61. Further, when a circuit court bases its decision on more than one independent ground and the appellant challenges fewer than all those grounds on appeal, we will affirm without addressing any of the grounds. *Id.* Accordingly, because appellants failed to challenge all the grounds relied on by the circuit court in making its decision, we affirm without addressing the merits.

Affirmed.

GLADWIN and HARRISON, JJ., agree.

*Jimmy Taylor* and *Robert S. Tschiemer*, for appellants.

*Wright, Lindsey & Jennings LLP*, by: *Michael A. Thompson*, *Rodney P. Moore*, and *Alexander T. Jones*, for appellees.